16-2015-CA-006626-XXXX-MA

Filing # 33373725 E-Filed 10/19/2015 10:30:58 AM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.:

DIVISION:

TINA RIEHM, as Personal
Representative of the Estate of
JEREMIE H. RIEHM, deceased,

     Plaintiff,

vs.

SEA STAR LINE, LLC d/b/a "TOTE
Maritime" and also d/b/a "TOTE
Maritime Puerto Rico", a foreign
limited liability company, and TOTE
SERVICES, INC., a foreign for profit
corporation,

     Defendants.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

    Plaintiff, TINA RIEHM, as Personal Representative of the Estate of

JEREMIE H. RIEHM, deceased, sues Defendants, SEA STAR LINE, LLC d/b/a

"TOTE Maritime" and also d/b/a "TOTE Maritime Puerto Rico", a foreign limited

liability company, and TOTE SERVICES, INC., a foreign for profit corporation,

and in support thereof alleges:

## Preliminary Statement

1.      This is an action for the wrongful death of Jeremie Riehm, a seaman killed while working as the third mate of the El Faro, a cargo ship owned and/or operated and/or managed by both Defendants at all relevant times and seeks damages in excess of $15,000, excluding interest, attorney's fees and costs.

2.      Defendants' negligence in maintaining and/or operating and/or managing El Faro, as well as failure to provide a seaworthy vessel, were the direct cause of Jeremie Riehm's death at sea on or about October 1, 2015, when the El Faro sank in the Atlantic Ocean north of Crooked Island, Bahamas.

3.      This action is brought by Jeremie Riehm's widow TINA RIEHM, as the duly appointed, qualified and acting Personal Representative of the Estate of Jeremie H. Riehm, deceased, by Letters of Administration dated October 15, 2015 (Lee County Florida Probate Division Case Number 15-CP-002309), on behalf of her deceased husband, herself, and their two children.  Tina Riehm is the statutory beneficiary entitled to bring this suit on behalf of the decedent's estate and the aforementioned beneficiaries pursuant to the Jones Act, 46 U.S.C. § 688, and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301 *et seq.* and the General Maritime Law.

4.      Venue is proper in this Court as the Defendants SEA STAR LINE, LLC d/b/a TOTE Maritime and also d/b/a TOTE Maritime Puerto Rico, a foreign

limited liability company, and TOTE SERVICES, INC., had, or usually kept an office for transaction of their customary business in Jacksonville, Duval County, Florida.

5.    This complaint asserts a cause of action for the wrongful death of Jeremie Riehm, a citizen of the United States and a resident of Florida, at the time of his death, the beneficiaries of which are:

        a.    Tina Riehm, a resident of Florida, and the surviving spouse of the decedent Jeremie Riehm;

        b.    C    R    , a resident of Florida, and the minor son of decedent Jeremie Riehm who qualifies as a dependent relative of the Deceased;

        c.    C    R    a resident of Florida, and the child of decedent Jeremie Riehm who qualifies as a dependent relative of the Deceased;

        d.    The decedent's Estate.

6.    The El Faro (the "Vessel") (IMO number 7395351) was a 790-foot-long ship built in 1975, which sank in the North Atlantic Ocean on or about October 1, 2015.

7.    Sea Star Line, LLC d/b/a "TOTE Maritime" and also d/b/a "TOTE Maritime Puerto Rico" (hereinafter "Sea Star Line") is a foreign limited liability

3

Case 3:15-cv-01296-HLA-MCR   Document 2   Filed 10/30/15   Page 4 of 15 PageID 14

company incorporated under the laws of Delaware with its principle place of business in Jacksonville, Florida, and was the record owner of the El Faro during Jeremie Riehm's employment, and at the time of the sinking of the vessel and Jeremie Riehm's death.

8.     Tote Services, Inc. is a foreign for profit corporation existing under the laws of Delaware with its principle place of business in Jacksonville, Florida, and was the employer of Jeremie Riehm during his service on the Vessel, and at the time of the sinking of the Vessel and Jeremie Riehm's death.

9.     Jeremie Riehm, the deceased, was the Third Mate and was acting within the course and scope of his employment with Tote Services and was on the El Faro with the permission of its owner Sea Star Line at all times material hereto.

10.     Tina Riehm, the personal representative of the Estate of Jeremie Riehm and as an individual, is a citizen of the United States and resident of Florida and is otherwise *sui juris*.

### Relevant Facts Applicable to All Counts

11.     The El Faro left from Jacksonville, Florida on September 29, 2015 at approximately 8:10 p.m., loaded with approximately 391 containers topside and 294 cars, trucks and trailers below deck intending to sail approximately 1,300 miles over the course of four days to San Juan, Puerto Rico.

4

12.   Prior to leaving the Jacksonville Port, the Captain of the El Faro, Michael Davidson, contacted his employers at Tote Services, Inc. and/or the ship owner Sea Star Line and advised that he was aware of the developing storm in the area.

13.   At approximately 6:16 a.m. on September 30, 2015, the El Faro began deviating from its usual straight-line route to San Juan, Puerto Rico, instead shifting closer to the Bahamas, but still headed towards the storm at or near full speed.

14.   At approximately 8 a.m. on September 30, 2015, the National Weather Service upgraded Tropical Storm Joaquin to Hurricane Joaquin, and predicted that the storm would approach the El Faro's path near the Bahamas.

15.   At approximately 10 a.m., Captain Davidson sent an email to TOTE indicating that he understood the weather conditions in his intended path and suggesting that he had a plan to try outrun the approaching hurricane.

16.   At that time, Captain Davidson, still north of the Bahamas and hundreds of miles from the approaching storm, had at least three safe alternatives: slow down to assess the weather; turn around and head away from the storm; or change course and head towards Florida.  Instead, the El Faro continued straight towards the intensifying hurricane.

17.   Over the next 21 hours the National Weather Service issued seven more hurricane advisories, each warning of the storm's increasing strength.

18.   Despite the warnings, the El Faro's Captain did not adjust his course and the ship continued to travel to towards Hurricane Joaquin as the storm continued to strengthen.

19.   At about 5 p.m. on September 30, 2015, nine hours after the National Weather Service first declared Joaquin a hurricane, the El Faro continued past "Hole in the Wall," a gap in the Bahamas archipelago, another escape route, which would have allowed the ship to travel west, away from the hurricane.

20.   Sailing at approximately 20 knots, near the top speed of the 40-year-old ship, Captain Davidson took the shorter route east of the Bahamas towards the hurricane rather than the longer route closer to the Florida coast that would have avoided the storm.

21.   Instead of delaying the voyage until it was safe or taking a longer more expensive trip around the storm which would have used more fuel and resulted in a late delivery, the course of action suggested and/or approved by the Defendants was to try and outrun the storm by sending the antiquated cargo ship into extreme weather.

22.   Some crew members appreciated the danger, were concerned about their safety, and contacted loved ones.  On such message sent by crew member

6

Danielle Randolph to her mother explained: "Not sure if you've been following the weather at all, but there is a hurricane out here and we are heading straight into it."

23.   At approximately 9:09 p.m. on September 30, 2015, the El Faro still traveling at 20 knots (at or approaching the vessel's maximum speed given the conditions), was approximately 200 miles northeast of the hurricane, and continued to head into the projected path of the storm.

24.   At approximately 2:09 a.m. on October 1, 2015, the El Faro was only about 50 miles from the eye of Joaquin, and still heading towards the center of the storm at nearly 17 knots.

25.   At approximately 3:56 a.m., El Faro's last logged location, the ship -- apparently unable to maintain its speed due to the waves-- was slightly less than 50 miles from the eye of the hurricane and was traveling at 10.7 knots.

26.   At approximately 7:15 a.m. on October 1, 2015, the El Faro sent out a distress signal saying that it had lost propulsion, was taking on water, and that the ship was listing 15 degrees, but that the situation was still "manageable."

27.   At the time of the distress signal, the El Faro was without functioning engines, was 36 nautical miles northeast of Acklins and Crooked Islands, Bahamas, close to the eye of Hurricane Joaquin, and was taking on water from a hatch that had opened up while the crew was attempting to pump out the water.

28.     Without propulsion the El Faro and its crew were at the mercy of the sea and were being battered by waves estimated to be as high as 50 feet and 140 mile per hour winds.

29.     No further communications were ever received from the El Faro.

30.     A comprehensive search and rescue operation was undertaken almost immediately by the United States Coast Guard with assistance from the United States Navy. However, rescue efforts were hampered by the extreme weather and the Coast Guard was not even able to fly into the last known position of the El Faro for several days due to the scope of the hurricane.

31.     There were no survivors and all 33 people on the El Faro were lost at sea.

**COUNT I:  SURVIVAL ACTION FOR NEGLIGENCE FOR PRE-DEATH PAIN AND SUFFERING UNDER THE JONES ACT AGAINST TOTE SERVICES, INC.**

32.     Plaintiff, TINA RIEHM, Personal Representative of the Estate of JEREMIE RIEHM, deceased, re-adopts and re-alleges paragraphs 1 through 31 as if fully set forth herein, and further alleges as follows:

33.     As the employer of seamen such as Jeremie Riehm Defendant Tote Services, Inc. had a duty to exercise reasonable care to provide Jeremie Riehm with a safe place to work.

8

34.     The Defendant was negligent, in one or more of the following respects:

      a.     Ordering or permitting the fully loaded vessel to sail into extreme weather knowing that there was a tropical storm and later a major hurricane in or near the intended route;

      b.     Failing to instruct the captain to remain in port in light of the extreme weather; or to plot a course around or away from the storm;

      c.     Failing to repair known problems with the vessel prior to ordering or permitting the vessel to sail;

      d.     Failing to provide a vessel that was reasonably fit for its intended purpose;

      e.     Failing to recognize the danger of sending a 40-year-old fully loaded top-heavy roll-on roll-off cargo ship into a hurricane;

      f.     Failing to procure enclosed life boats suitable for extreme weather;

      g.     Fostering an environment where employees, including the captain, were so concerned about retaining their employment, that they were willing to take unreasonable risks to avoid a late delivery which would jeopardize their jobs.

      h.     Failing to implement a Safety Management System compliant with the International Safety Management Code;

      i.     Failing to equip the Vessel with a working EPIRB with procedures to ensure activation for location information in case of an emergency.

35.     The Defendant's breach of these duties as described above caused Jeremie Riehm to suffer bodily injury, physical pain, emotional distress, and

mental anguish before he died as he and the other El Faro crew members remained helpless in the middle of a hurricane.

36.     The Jones Act, 46 U.S.C. § 688, provides the remedy of a survival action for the decedent's pre-death pain and suffering.

WHEREFORE the Plaintiff, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, demands judgment against Defendant Tote Services, Inc. for the Deceased's pre-death pain and suffering together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT II:  NEGLIGENCE CAUSING WRONGFUL DEATH UNDER THE JONES ACT AGAINST TOTE SERVICES, INC.

37.     Plaintiff, TINA RIEHM, Personal Representative of the Estate of JEREMIE RIEHM, deceased, re-adopts and re-alleges paragraphs 1 through 31 as if fully set forth herein, and further alleges as follows:

38.     The Jones Act permits a claim for wrongful death of a seaman by the seaman's personal representative based upon negligence.

39.     As the employer of seamen such as Jeremie Riehm Defendant Tote Services, Inc. had a duty to exercise reasonable care to provide Jeremie Riehm with a safe place to work.

40.   The Defendant was negligent, in one or more of the following respects:

a.   Ordering or permitting the fully loaded vessel to sail into extreme weather knowing that there was a tropical storm and later major hurricane in or near the intended route of the ship;

b.   Failing to repair known problems with the vessel prior to ordering or permitting the vessel to sail;

c.   Failing to provide a vessel that was reasonably fit for its intended purpose;

d.   Failing to instruct the captain to remain in port in light of the extreme weather or to plot a course around the storm;

e.   Failing to recognize the danger of sending a 40-year old fully loaded top-heavy roll-on roll-off cargo ship into a hurricane;

f.   Failing to procure enclosed life boats and/or other measures so as to make the ship survivable in extreme weather;

g.   Fostering an environment where employees, including the captain, were so concerned about retaining their employment, that they were willing to do anything to avoid a late delivery which would jeopardize their jobs;

h.   Failing to implement a Safety Management System compliant with the International Safety Management Code;

i.   Failing to equip the Vessel with a working EPIRB with procedures to ensure activation for location information in case of an emergency.

41.   The Defendant's breach of one or more of these duties as described above caused the El Faro to sink, resulting in Jeremie Riehm's death.

42.   As a further result, Jeremie Riehm's Estate and dependent relatives,

11

his wife Tina Riehm, son Carlo Riehm and daughter Clancy Riehm, suffered and will suffer in the future: Loss of support; loss of the services of the Deceased; loss of nurture, guidance, care and instruction; and loss of inheritance. Additionally, the Estate will suffer the loss of the prospective net accumulations of the estate, which might reasonably have been expected but for the wrongful death.

WHEREFORE, Plaintiff, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, demands judgment against Defendant Tote Services, Inc. for any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief this Court deems proper.

### COUNT III:   CLAIM FOR WRONGFUL DEATH UNDER DEATH ON HIGH SEAS ACT AGAINST SEA STAR LINE, LLC D/B/A "TOTE MARITIME" AND ALSO D/B/A "TOTE MARITIME PUERTO RICO"

43.     Plaintiff, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, re-adopts and re-alleges paragraphs 1 through 31 as if fully set forth herein, and further alleges as follows:

44.     The Death on High Seas Act, 46 U.S.C. § 30301 *et seq.*, permits a claim for wrongful death of a seaman by the seaman's personal representative based upon unseaworthiness of the vessel on which the seaman worked, to the extent the unseaworthiness occurred on the high seas beyond a marine league from

12

the shore of any state of the United States, which is where Jeremie Riehm's death occurred.

45. Defendant Sea Star Line, at all material times, had a non-delegable duty to provide a seaworthy vessel, equipment, and appurtenances including tools, equipment, and crewmembers themselves reasonably fit for their intended use.

46. During the time period in which the Deceased was on the Defendant's Vessel, and on the high seas beyond a marine league from the shore of any state or the Territories or dependencies of the United States, the unseaworthiness of Defendant's vessel was a legal cause of injury and damage to Jeremie Riehm, including, without limitation, by reason of one or more of the following:

    a.    The El Faro was unsafe, unfit, and unseaworthy due to the Defendants' conduct and the overall condition of the 40-year-old ship,

    b.    Failing to repair known problems with the vessel prior to ordering or permitting the vessel to sail;

    c.    Not having adequate lifesaving equipment on board;

    d.    Failing to procure enclosed life boats and/or other measures so as to make the ship survivable in extreme weather;

    e.    Failing to maintain the ship, including the propulsion system, in such a manner as to ensure that it would not completely fail if used at or near full capacity or in rough waters;

    f.    Failing to maintain a backup power or propulsion system for emergency use if the ship lost its main propulsion system, including redundant controls, dynamic GPS-guided positioning, and bow and stern thrusters capable of angling the ship into the

13

swells;

g.   Failing to ensure the ship was structurally fit for use in extreme
weather before sending it into the path a hurricane;

h.   The El Faro was not reasonably fit for its intended purpose due
to its age and overall condition.

i.   Failing to implement a Safety Management System compliant
with the International Safety Management Code;

j.   Failing to equip the Vessel with a working EPIRB with
procedures to ensure activation for location information in case
of an emergency.

47.   The unseaworthiness of the El Faro caused Jeremie Riehm's death.

48.   As a result, Jeremie Riehm's Estate and dependent relatives, his wife
Tina Riehm, son C    R    and daughter Cl     R    , suffered and will suffer
in the future: Loss of support; loss of the services of the Deceased; loss of nurture,
guidance, care and instruction; loss of inheritance, and funeral expenses.

WHEREFORE, Plaintiff, Tina Riehm, as Personal Representative of the
Estate of Jeremie Riehm, deceased, demands judgment against Defendant Sea Star
Line, LLC d/b/a "TOTE Maritime" and also d/b/a "TOTE Maritime Puerto Rico"
for any and all compensatory damages, statutory interest as permitted, pre-
judgment interest as permitted, attorney's fees as permitted, costs as permitted,
trial by jury for all issues so triable, and any other relief this Court deems proper.

## Demand For Jury Trial

49.    Plaintiff, Plaintiff, Tina Riehm, as Personal Representative of the Estate of Jeremie Riehm, deceased, respectfully demands trial by jury on all issues so triable.

PAJCIC & PAJCIC, P.A.

*/s/ Stephen J. Pajcic, III*

**STEPHEN J. PAJCIC, III, Esq.**
Florida Bar No.: 143485
**THOMAS F. SLATER, Esq.**
Florida Bar No.: 614114
**BENJAMIN E. RICHARD, Esq.**
Florida Bar No. 13896
One Independent Drive, Ste. 1900
Jacksonville, FL 32202
Telephone:   (904) 358-8881
Telefax:      (904) 354-1180
Tom@pajcic.com; Juli@pajcic.com
*Attorneys for Plaintiff Tina Riehm, as*
*Personal Representative of the Estate of*
*Jeremie H. Riehm, deceased*